UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

YAHNICK MARTIN and BRANDIS PEEPLES,

                  Plaintiffs,

                                           COMPLAINT AND
- against -                             JURY TRIAL DEMAND

P.O. PETER BEHAN, Shield No. 06134, P.O.
ROMAN GORIS, Shield No. 14772, P.O. DEVEN
OKVIST, Shield No. 05730, and THE CITY OF
NEW YORK,

                  Defendants.

------------------------------------------------------------------X

        Plaintiffs, YAHNICK MARTIN and BRANDIS PEEPLES, by their attorney, ALAN

D. LEVINE, ESQ., complaining of the defendants herein, respectfully allege as follows:

## JURISDICTION

        1.     This is a civil action, seeking compensatory damages, punitive damages

and attorney's fees.

        2.     This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the

fourth and fourteenth amendments to the Constitution of the United States.

        3.     Jurisdiction is founded upon 28 U.S.C. §§1331, 1343 and 1367.

        4.     Plaintiffs, invoking the pendent jurisdiction of this Court, also seek

compensatory and punitive damages for battery, false arrest, malicious prosecution and

negligence.

## VENUE

        5.     Venue is properly alleged in the Eastern District of New York in that the

acts complained of herein occurred within this District.

## JURY TRIAL DEMAND

6.      Plaintiffs hereby demand a trial by jury of all issues in this action that are so triable.

## PARTIES

7.      At all times relevant hereto, plaintiff YAHNICK MARTIN (hereinafter "MARTIN") was and is a natural person, resident in the County of Kings, City and State of New York.

8.      At all times relevant hereto, plaintiff BRANDIS PEEPLES (hereinafter "PEEPLES") was and is a natural person, resident in the County of Kings, City and State of New York.

9.      At all times relevant hereto, plaintiffs were and are husband and wife.

10.      At all times relevant hereto, defendant P.O. PETER BEHAN, Shield No. 06134 (hereinafter "BEHAN") was and is a natural person, employed as a police officer by defendant CITY OF NEW YORK.

11.      At all times relevant hereto, defendant P.O. ROMAN GORIS, Shield No. 14772 (hereinafter "GORIS") was and is a natural person, employed as a police officer by defendant CITY OF NEW YORK.

12.      At all times relevant hereto, defendant P.O. DEVEN OKVIST, Shield No. 05730, (hereinafter "OKVIST") was and is a natural person, employed as a police officer by defendant CITY OF NEW YORK.

13.      At all times relevant hereto, defendant CITY OF NEW YORK was and is a municipal corporation, organized and existing pursuant to the laws of the State of New York.

14.     On or about March 15, 2012, this date being within ninety (90) days after the claims for battery, false arrest, malicious prosecution and negligence herein sued upon accrued, plaintiff MARTIN served upon the Comptroller of the City of New York a verified written notice of claim setting forth the time, place, nature and manner in which said claim arose.

15.     More than thirty (30) days have elapsed since the aforementioned verified notice of claim was served and the Comptroller has neglected and refused to make payment of said claim.

16.     This action is commenced within one year and ninety days from the date the pendent claims herein accrued.

17.     The individual defendants are sued in their individual capacities.

## AS AND FOR A FIRST CAUSE OF ACTION
## ON BEHALF OF BOTH PLAINTIFFS
## AGAINST THE INDIVIDUAL DEFENDANTS
### (42 U.S.C. §1983)

18.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "17" hereinabove as if more fully set forth at length herein.

19.     On or about December 23, 2011, plaintiff PEEPLES rented a motor vehicle so that she, plaintiff MARTIN, and their three infant children could travel together to visit relatives in South Carolina for the holidays.

20.     Before embarking on their trip, plaintiffs, at approximately 10:30 P.M., drove, in the rented vehicle, to St. Johns Place, in the County of Kings, City and State of New York, so that plaintiff PEEPLES could deliver e Christmas gift to a friend of plaintiffs who resided in a dwelling located on St. Johns Place.

21.   While plaintiff MARTIN waited for plaintiff PEEPLES to return from delivering the aforementioned gift, he stepped outside the vehicle to smoke a cigar.

22.   Approximately two minutes after plaintiff MARTIN had exited the vehicle, a marked New York City Police Department van, occupied by the three individual defendants to this action, pulled up and stopped behind a double-parked vehicle located on the opposite side of the street from where plaintiff MARTIN and the vehicle were standing.

23.   Two of the individual defendants exited the Police Department van and approached the double-parked vehicle.

24.   The officers shined flashlights into the double-parked vehicle.

25.   The double-parked vehicle was occupied by two females, one of whom was disabled and one of whom was a schoolteacher.

26.   The schoolteacher, who was driving the vehicle, rolled down her window and asked the defendant located on her side of the vehicle what the problem was. He responded that the defendants smelled marijuana.

27.   After the aforementioned defendant was informed that no one inside the vehicle was smoking anything he asked what the occupants were doing at the location.

28.   After being informed that the occupants, who were waiting for a relative to come outside to the vehicle and assist in unloading packages, lived at the location where they were parked, the defendants turned their attention to plaintiff MARTIN.

29.   The individual defendant who had been driving the Police Department van approached plaintiff MARTIN and informed him that he smelled marijuana.  Plaintiff MARTIN responded that he was not smoking marijuana, only a cigar.

30.    In order to emphasize his point, plaintiff MARTIN took a puff on his cigar and blew the smoke into the air so that the defendant could smell it.

31.    The aforementioned defendant ordered plaintiff MARTIN to put his hands up.

32.    Plaintiff MARTIN responded that he would not put his hands up because he had not done anything.

33.    Stating, "Oh, so you're not gonna put your hands up," the aforementioned defendant reached for his handcuffs. Plaintiff MARTIN now stated, "O.K., I'll put my hands up but this is really bullshit."

34.    Plaintiff MARTIN raised his hands in the air and was frisked by the aforementioned defendant.

35.    Despite being told by plaintiff MARTIN that he had no right to reach into his pockets, the aforementioned defendant did so and felt around inside the pockets of plaintiff MARTIN's clothing.

36.    The aforementioned defendant removed the contents of plaintiff MARTIN's pockets, namely his wallet and his cigar lighter.

37.    After examining the contents of plaintiff MARTIN's wallet, the aforementioned defendant handed the wallet and lighter back to plaintiff MARTIN and began to walk away from plaintiff MARTIN.

38.    As the aforementioned defendant walked away from plaintiff MARTIN, plaintiff MARTIN reiterated to him that he had no right to go into his pockets.

39.    The aforementioned defendant turned and smirked at plaintiff MARTIN, whereupon plaintiff MARTIN asked him, "Where's the hundred dollars that was in my pocket?"

40.     The aforementioned defendant replied, "I make too much money to take a hundred dollars out of your pocket."

41.     Overhearing this exchange, the passenger in the double-parked car asked the defendants why they were harassing people and called out to plaintiff MARTIN to get the aforementioned defendant's shield number.

42.     Plaintiff MARTIN now asked the aforementioned defendant for his name and shield number.

43.     At this point, another one of the individual defendants, who is described as having a beard, said to plaintiff MARTIN, "You want to make accusations?  You are going to jail."

44.     Plaintiff MARTIN responded, "You know I was kidding. You know I don't have a hundred dollars. So this is unnecessary.  I am not making accusations."

45.     The bearded defendant told plaintiff MARTIN, "You want to be a smart ass and make accusations, you go to jail."

46.     The individual defendant who plaintiff MARTIN had jokingly accused of taking one hundred dollars handcuffed him, very tightly.

47.     Plaintiff MARTIN informed the defendants that he and his family were on their way to South Carolina for the holidays and asked to be released.

48.     When the defendants told him that he would not be released, he asked them to at least wait until plaintiff PEEPLES returned from the residence of the friend who she was giving a Christmas gift to, or at least to telephone her and inform her that plaintiff MARTIN had been arrested.

49.     Plaintiff MARTIN pointed out to the defendants that his vehicle was still running, with the keys in the ignition, and with plaintiff PEEPLES's pocketbook, their

children's car seats and clothing, two cell phones, and Christmas gifts for his family in South Carolina visible and unprotected therein.

50.     The defendants refused to honor his request. Rather, they placed plaintiff MARTIN inside their van and pulled away from the scene.

51.     When plaintiff MARTIN asked them, "Are we seriously going to leave my car here like that?" the bearded defendant responded, "That's too bad, you should have thought of that before being a smart ass."

52.     Within five minutes of plaintiff MARTIN's being removed from the scene, a male walking along the street entered the rented vehicle and drove off in it, thereby stealing it.

53.     As they drove from the scene, defendant BEHAN, who was seated in the back of the van, told plaintiff MARTIN that if the defendants found anything in the van it would be presumed to belong to plaintiff MARTIN and he would be charged with possession of it.

54.     Plaintiff MARTIN was taken to the stationhouse of the 77th Precinct.

55.     Plaintiff MARTIN pleaded with defendant BEHAN to let him make a phone call to his wife, plaintiff PEEPLES, to let her know of his whereabouts.

56.     However, defendant BEHAN ignored plaintiff MARTIN's request, placed him in a holding cell, and walked away.

57.     Plaintiff MARTIN was able to explain his situation to another officer who was evidently in charge of the holding area of the precinct.

58.     That officer allowed plaintiff MARTIN to telephone his wife, plaintiff PEEPLES.

59.     In plaintiff MARTIN's telephone conversation with plaintiff PEEPLES, she informed him that the two women sitting in the double-parked car across the street from their vehicle had told her what had happened and that they had seen someone enter the family's vehicle and drive off with it.

60.     Within approximately forty-five minutes, defendant BEHAN returned to the holding area.

61.     Plaintiff MARTIN informed defendant BEHAN that the vehicle had been stolen and told him that the vehicle would not have been stolen if the defendants had allowed plaintiff MARTIN to wait for his wife or at least to remove the ignition key from his vehicle.

62.     Defendant BEHAN's response was to tell plaintiff MARTIN that he would be kept in custody if he did not shut his mouth.

63.     Despite his threat, defendant BEHAN issued two summonses for disorderly conduct to plaintiff MARTIN.

64.     When plaintiff MARTIN asked defendant BEHAN to explain the charges he had made against him, defendant BEHAN simply told him to get out or he would end up having to stay in custody.

65.     Plaintiff PEEPLES arrived at the stationhouse.

66.     When plaintiff PEEPLES informed a police administrative assistant that she wished to file a stolen vehicle report, she was told that, in order to do so she and plaintiff MARTIN would have to return to the location from which the vehicle had been stolen with the individual defendants.

67.     Plaintiffs requested that someone other than the individual defendants accompany them to the scene.

68.    Their request was honored and two superior officers accompanied plaintiffs and the three individual defendants to the scene.

69.    At the scene, one of the superior officers asked defendant BEHAN if he had been aware that plaintiffs' vehicle had been left at the scene in an unsecured condition when plaintiff MARTIN was arrested.

70.    Defendant BEHAN denied having any such knowledge.

71.    Plaintiff MARTIN was released after having been in custody for a total time of approximately one hour.

72.    The vehicle that plaintiff PEEPLES had rented was recovered on or about January 6, 2012.

73.    All of pleintiffs' and their children's property that had been inside the vehicle at the time that it was stolen was gone by the time the car was recovered.

74.    Moreover, one of plaintiff PEEPLES's credit cards had been used.

75.    Furthermore, the vehicle was damaged and plaintiff PEEPLES was billed by the vehicle rental company for the repairs.

76.    One of the summonses against plaintiff MARTIN was dismissed and sealed in Criminal Court of the City of New York, Kings County on March 7, 2012, without plaintiff MARTIN having to appear in court.

77.    Plaintiff MARTIN appeared in court on the second summons on its return date, March 21, 2012.   That summons was dismissed and sealed in Criminal Court of the City of New York, Kings County on that date.

78.    Defendants BEHAN, GORIS, and OKVIST violated plaintiffs' right to the due process of law guaranteed to them by the fourth, fifth and fourteenth amendments to the Constitution of the United States, in that, acting under color of stete law, they,

without any cause or provocation whatsoever, arrested plaintiff MARTIN without probable cause to do so, with no cause or justification therefor employed excessive force against him, maliciously prosecuted him, and intentionally failed to protect plaintiffs' personal property from loss.

79. As a result of the aforementioned acts committed against them by the individual defendants, plaintiff MARTIN suffered a deprivation of his right to the due process of law guaranteed to him by the fourth and fourteenth amendments to the Constitution of the United States, and, as a result, suffered a loss of his liberty; was prevented from being with his family for the Christmas holidays; suffered, and continues to suffer, serious and permanent physical and emotional injuries, for which he has received treatment and has incurred expenses for same; and lost time and income from his employment. Furthermore, as a result of the aforementioned acts committed against them by the individual defendants, both plaintiffs suffered damage to, and the loss of, their personal property in violation of the fifth and fourteenth amendments to the Constitution of the United States.

80. By reason of the aforementioned unconstitutional and illegal actions taken against them by defendants BEHAN, GORIS, and OKVIST, plaintiffs have been damaged in the amount of One Million ($1,000,000.00) Dollars and demand an additional One Million ($1,000,000.00) Dollars as punitive damages against the individual defendants.

## AS AND FOR A SECOND CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF MARTIN
## AGAINST DEFENDANTS BEHAN, GORIS, OKVIST
## AND THE CITY OF NEW YORK
### (Battery)

81.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "80" hereinabove as if more fully set forth at length herein.

82.     On or about December 23, 2011, at approximately 10:30 P.M., at or near the corner of St. Johns Place and Washington Avenue, in the County of Kings, City and State of New York, the individual defendant who had been driving the aforementioned Police Department van, without probable cause therefor, offensively touched plaintiff MARTIN by handcuffing him so tightly as to cause serious and permanent injury to plaintiff MARTIN's left wrist, hand and arm.

83.     The aforementioned force used by the aforementioned defendant was not reasonable under the circumstances.

84.     At the aforementioned time and place, the aforementioned defendant was acting within the scope of his employment by defendant CITY OF NEW YORK.

85.     By reason of the aforementioned battery committed against plaintiff MARTIN by the aforementioned defendant, while he was acting within the scope of his employment by defendant CITY OF NEW YORK, plaintiff MARTIN suffered and continues to suffer serious and permanent physical and emotional injuries, lost time and income from his employment and incurred expenses for medical and psychological treatment.

86.     As a result of the battery committed upon him by the aforementioned defendant, while he was acting within the scope of his employment by defendant CITY

OF NEW YORK, plaintiff MARTIN has been damaged in the amount of One Million ($1,000,000.00) Dollars and demands an additional One Million ($1,000,000.00) Dollars as punitive damages against the aforementioned defendant.

## AS AND FOR A THIRD CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF MARTIN
## AGAINST DEFENDANTS
## BEHAN, GORIS, OKVIST
## AND THE CITY OF NEW YORK
### (False Arrest)

87.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "86" hereinabove as if more fully set forth at length herein.

88.    On or about December 23, 2011, at approximately 10:30 P.M., at or near the corner of St. Johns Place and Washington Avenue, in the County of Kings, City and State of New York, defendants BEHAN, GORIS, and OKVIST forcibly, wrongfully and unlawfully arrested plaintiff MARTIN and, against plaintiff MARTIN's own free will, caused him to be incarcerated for approximately one hour.

89.    Defendant BEHAN illegally, falsely, maliciously, wrongfully and unlawfully accused plaintiff MARTIN of having committed two separate counts of disorderly conduct.

90.    Plaintiff MARTIN was illegally, falsely, maliciously, wrongfully, and unlawfully kept in confinement in a New York City Police Department van and in the stationhouse of the 77th Precinct for approximately one hour.

91.    At the time that they committed the aforementioned acts of false arrest and false imprisonment against plaintiff MARTIN, defendants BEHAN, GORIS, and

OKVIST were acting within the scope of their employment by defendant CITY OF NEW YORK.

92.    By reason of the false arrest and false imprisonment committed against him by defendants BEHAN, GORIS, and OKVIST, while they were acting within the scope of their employment by defendant CITY OF NEW YORK, plaintiff MARTIN lost his liberty, suffered and continues to suffer serious and permanent physical and emotional injuries, and incurred expenses for medical and psychological treatment and lost time and income from his employment.

93.    As a result of the aforesaid acts of false arrest and false imprisonment committed against him by defendants BEHAN, GORIS, and OKVIST, while they were acting within the scope of their employment by defendant CITY OF NEW YORK, plaintiff MARTIN has been damaged in the amount of One Million ($1,000,000.00) Dollars and demands an additional One Million ($1,000,000.00) Dollars as punitive damages against defendants BEHAN, GORIS and OKVIST.

### AS AND FOR A FOURTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF MARTIN
### AGAINST DEFENDANTS
### BEHAN AND
### THE CITY OF NEW YORK
### (Malicious Prosecution)

94.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "93" hereinabove as if more fully set forth at length herein.

95.    On or about December 23, 2011, defendant BEHAN maliciously caused a criminal prosecution to be commenced against plaintiff MARTIN by his act of falsely and maliciously arresting him and charging him with two counts of disorderly conduct.

96.    Defendant BEHAN was without probable cause to arrest and charge plaintiff MARTIN with the two offenses that defendant BEHAN charged him with.

97.    On or about March 7, 2012, one of the two charges of disorderly conduct against plaintiff MARTIN was dismissed and sealed in Criminal Court of the City of New York, County of Kings.

98.    On or about March 21, 2012, the second charge of disorderly conduct against plaintiff MARTIN was dismissed and sealed in Criminal Court of the City of New York, County of Kings.

99.    At the time that defendant BEHAN falsely and maliciously caused the aforesaid prosecution to be commenced against plaintiff MARTIN, he was acting within the scope of his employment by defendant CITY OF NEW YORK.

100.    By reason of the prosecution maliciously commenced against plaintiff MARTIN by defendant BEHAN, while he was acting within the scope of his employment by defendant CITY OF NEW YORK, plaintiff MARTIN suffered a loss of his liberty, suffered mental distress and anguish for which he was compelled to obtain treatment, and was forced to defend himself in a criminal proceeding.

101.    As a result of the prosecution maliciously commenced against plaintiff MARTIN by defendant BEHAN, while he was acting within the scope of his employment by defendant CITY OF NEW YORK, plaintiff MARTIN has been damaged in the amount of One Million ($1,000,000.00) Dollars and demands an additional One Million ($1,000,000.00) Dollars as punitive damages against defendant BEHAN.

## AS AND FOR A FIFTH CAUSE OF ACTION
## ON BEHALF OF BOTH PLAINTIFFS
## AGAINST DEFENDANTS BEHAN, GORIS AND OKVIST
## AND THE CITY OF NEW YORK
### (Negligence)

102. Plaintiffs repeat, reiterete and realtege each and every allegation contained in paragraphs "1" through "101" hereinabove as if more fully set forth at length herein.

103. On or about December 23, 2011, at approximately 10:30 P.M., at or near the corner of St. Johns Place and Washington Avenue in the County of Kings, City and State of New York, defendants BEHAN, GORIS, and OKVIST negligently, recklessly, and carelessly caused plaintiffs to suffer the loss of their personal property by their act of not permitting plaintiff MARTIN to secure a motor vehicle that plaintiff PEEPLES had rented before they removed him from the aforementioned location, at which said vehicle was standing unlocked and with its engine running with the key in the ignition.

104. Approximately five minutes after removing plaintiff MARTIN from the aforementioned location, the aforementioned vehicle, with many items of plaintiffs' and their family's personal property left visible and unprotected inside, was stolen.

105. Plaintiffs never rocovered any of the items of personal property that were inside the aforementioned vehicle when it was stolen.

106. Plaintiff PEEPLES was billed by the company that had rented her the aforomentioned vehicle for damage to the vehicle that occurred during the period between its theft and its recovery.

107. At the time they committed the aforomentioned acts of recklessness, carelessness, and negligence, defendants BEHAN, GORIS, and OKVIST were acting within the scope of their employment by defendant CITY OF NEW YORK.

108.   The aforementioned theft of the vehicle that plaintiff PEEPLES had leased, the loss of all of plaintiffs' personal property contained therein, and the damage to the vehicle, were a direct result of the negligence, recklessness, and carelessness of defendants BEHAN, GORIS, and OKVIST, who were acting within the scope of their employment by defendant CITY OF NEW YORK, and was not caused by any culpable conduct on the part of the plaintiffs.

109.   As a result of the recklessness, carelessness, and negligence of defendants BEHAN, GORIS, and OKVIST, committed while they were acting within the scope of their employment by defendant CITY OF NEW YORK, plaintiffs have been damaged in the amount of Twenty Five Thousand ($25,000.00) Dollers.

WHEREFORE, plaintiffs, YAHNICK MARTIN and BRANDIS PEEPLES, demand judgment against defendants, P.O. PETER BEHAN, Shield No. 06134, P.O. ROMAN GORIS, Shield No. 14772, P.O. DEVEN OKVIST, Shield No. 05730, and THE CITY OF NEW YORK, as follows:

FIRST CAUSE OF ACTION:      One   Million   ($1,000,000.00)   Dollars   and demand an additional One Million ($1,000,000.00) Dollars as punitive damages against the individual defendants;

SECOND CAUSE OF ACTION:  One   Million   ($1,000,000.00)   Dollars   and demand an additional One Million ($1,000,000.00) Dollars as punitive damages against the individual defendants;

THIRD CAUSE OF ACTION:   One Million ($1,000,000.00) Dollars and demand an additional One Million ($1,000,000.00) Dollars as punitive damages against the individual defendants;

FOURTH CAUSE OF ACTION: One Million ($1,000,000.00) Dollars and demand an additional One Million ($1,000,000.00) Dollars as punitive damages against defendant BEHAN; and

FIFTH CAUSE OF ACTION: Twenty Five Thousand ($25,000.00) Dollars.

In addition, plaintiffs demand the costs and disbursements of this action, including their attorney's fees, pursuant to 42 U.S.C. §1988.

Dated: Kew Gardens, New York
     March 21, 2013

ALAN D. LEVINE, ESQ.
Attorney for Plaintiffs
80-02 Kew Gardens Road, Suite 302
Kew Gardens, New York 11415
(718) 793-6363